IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FRIENDS OF THE COLUMBIA GORGE, INC.,        05-CV-646-BR
and IN DEFENSE OF ANIMALS,

                                            OPINION AND ORDER
                Plaintiffs,

v.

ROY ELICKER,[1] DIRECTOR, OREGON
DEPARTMENT OF FISH AND WILDLIFE;
MARLA RAE, CHAIR, OREGON FISH AND
WILDLIFE COMMISSION; and
UNITED STATES FOREST SERVICE,

                Defendants.


GARY K. KAHN
Reeves, Kahn & Hennessy
4035 S.E. 52nd Ave.
Portland, OR 97286-0100
(503) 777-5473

            Attorneys for Plaintiffs

_____

        [1] Roy Elicker became the Director of Oregon Department of
Fish and Wildlife on August 4, 2007.  He is, therefore,
substituted as a Defendant in this action pursuant to Federal
Rule of Civil Procedure 25(d)(1).


1    -    OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**STEPHEN J. ODELL**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1024

        Attorneys for Defendant United States Forest
        Service (hereinafter referred to as USFS)

**HARDY MYERS**
Attorney General of Oregon
**JOHN CLINTON GEIL**
**MATTHEW J. DONAHUE**
Assistant Attorneys General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 974-4792

        Attorneys for State Defendants Roy Elicker,
        Director of Oregon Department of Fish and
        Wildlife, and Marla Rae, Chair of Oregon Fish and
        Wildlife Commission (the agencies hereinafter
        referred to as ODFW and OFWC respectively and the
        individuals in their official capacities referred
        to collectively as State Defendants)

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (#75), State Defendants' Motion for Summary Judgment (#94), and USFS's Cross-Motion for Summary Judgment (#107).

    For the following reasons, the Court

        1.   **DENIES** Plaintiffs' Motion as to Claims Two and Three against State Defendants;

2   -   OPINION AND ORDER

2.    **GRANTS** State Defendants' Motion as to Plaintiffs' Claims Two and Three;

3.    **GRANTS** Plaintiffs' Motion as to Claims One and Four against USFS, **DENIES as premature** Plaintiffs' Motion as to Claim Three against USFS, and **DENIES** Plaintiffs' Motion as to Claim Five against USFS; and

4.    **DENIES** USFS's Cross-Motion as to Plaintiffs' Claims One and Four, **DENIES as premature** USFS's Cross-Motion as to Plaintiffs' Claim Three, and **GRANTS** USFS's Cross-Motion as to Plaintiffs' Claim Five.

## SUMMARY OF PLAINTIFFS' CLAIMS

Plaintiffs bring the following claims for declaratory and injunctive relief:

Claim One - Plaintiffs request the Court to declare USFS violated the Columbia River Gorge National Scenic Area Act (Scenic Area Act) and the Management Plan for the Scenic Area (Scenic Area Plan) by erroneously exempting ODFW's Rocky Mountain Goat Columbia River Gorge Reintroduction Plan from a consistency review and request the Court to enjoin implementation of the Reintroduction Plan until such review is performed.

Claim Two - Plaintiffs request the Court to declare State Defendants violated the Scenic Area Act by approving ODFW's

Reintroduction Plan without ensuring it was reviewed for consistency and request the Court to enjoin the implementation of the Reintroduction Plan until such review is performed.

Claim Three - Plaintiffs request the Court to declare USFS and State Defendants violated the Scenic Area Act and the Scenic Area Plan by approving the Reintroduction Plan, which poses risks to sensitive plants within the Columbia River Gorge National Scenic Area (Scenic Area), and request the Court to enjoin the implementation of the Reintroduction Plan.

Claim Four - Plaintiffs request the Court to declare USFS violated the National Environmental Policy Act (NEPA) by failing to satisfy NEPA requirements to review the environmental impacts of the Reintroduction Plan and request the Court to enjoin the implementation of the Reintroduction Plan until USFS complies with NEPA.

Claim Five - Plaintiffs request the Court to declare USFS violated the National Forest Management Act (NFMA) by failing to prohibit the Reintroduction Plan even though it is inconsistent with the Mount Hood National Forest Land and Resource Management Plan (Mt. Hood Forest Plan) and request the Court to enjoin the implementation of the Reintroduction Plan.

## BACKGROUND

**I.    Columbia River Gorge National Scenic Area Act.**

Congress enacted the Scenic Area Act, 16 U.S.C. §§ 544-544p, for purposes of enhancing the scenic, cultural, recreational, and natural resources of the Columbia River Gorge and to protect and to encourage economic growth in the Gorge.  16 U.S.C. § 544a.  To accomplish these goals, the Scenic Area Act created the Scenic Area and established mechanisms for the regulation of land use and development within the Scenic Area.  The Scenic Area Act divides the Scenic Area into three land classifications:  Special Management Areas (SMAs) that are administered by USFS; General Management Areas (GMAs) that are administered by the Columbia River Gorge Commission (Commission);[2] and exempt urban areas.  16 U.S.C. § 544b.  *See also* Scenic Area Plan at 2-3.  The Scenic Area Act is basically a land-use planning statute designed to balance the needs of the counties within the Scenic Area with the protection of the natural and scenic beauty of the Columbia Gorge by designating areas as agricultural, commercial, recreational,

---

[2] The Columbia River Gorge Commission is a regional agency created pursuant to a bi-state compact between Oregon and Washington.  The thirteen-member Commission is comprised of three Oregon residents appointed by the Governor of Oregon; three Washington residents appointed by the Governor of Washington; one resident from each of the six counties within the Scenic Area appointed by the governing body of each of the respective counties; and one *ex officio*, nonvoting member who is an employee of USFS.  16 U.S.C. § 544c.

etc., and prescribing the types of development allowed in those areas.  Scenic Area Plan at 2-14.

The Scenic Area Act requires the Secretary of Agriculture to "administer Federal lands within the special management areas in accordance with [the Scenic Area Act] and other laws, rules and regulations applicable to the national forest system." 16 U.S.C. § 544f(a)(1).  SMAs constitute over one-third of the land within the nearly 300,000-acre Scenic Area.  In addition, "[e]xcept as otherwise provided in . . . § 544o of this title, Federal agencies having responsibilities within the scenic area shall exercise such responsibilities consistent with the provisions of [the Scenic Area Act] as determined by the Secretary." 16 U.S.C. § 544l(d).

Section 544o sets out the savings provisions of the Scenic Area Act and describes the compatibility of the Scenic Area Act with other applicable laws.  Section 544o(a)(8), invoked by USFS as the savings-clause exception that exempts the Reintroduction Plan from federal consistency review, provides: "Nothing in [the Scenic Area Act] shall – . . . affect the laws, rules and regulations pertaining to hunting and fishing under existing State and Federal laws and Indian treaties." 16 U.S.C. § 544o(a)(8).

The Scenic Area Act also mandates the development of a management plan for the Scenic Area.  16 U.S.C. §§ 544d(c),(d).

The Commission developed the Scenic Area Plan in compliance with the Scenic Area Act, and the Secretary of Agriculture concurred with the Scenic Area Plan in 1991.

The Scenic Area Plan establishes a cooperative implementation, management, and monitoring scheme for the Scenic Area with responsibilities shared by USFS, the Commission, and the counties in Washington and Oregon that lie within the Scenic Area.[3]  Scenic Area Plan at IV-1, IV-2.  All land uses within the Scenic Area, whether private, local, or federal, must comply with the Scenic Area Act and the Scenic Area Plan.  *Columbia River Gorge United-Protecting People and Prop. v. Yeutter*, 960 F.2d 110, 112 (9th Cir. 1992).

The Scenic Area Plan sets out two categories of uses in the Scenic Area:  uses allowed outright and uses allowed only after review for consistency with the Scenic Area Act and the Scenic Area Plan.  Scenic Area Plan at 11-14.

## II.  **Factual Background.**

The Scenic Area and the surrounding forest wilderness are governed by a complex matrix of statutes and forest plans including the Scenic Area Act; the Scenic Area Plan developed pursuant to § 544d of the Scenic Area Act; and the Mt. Hood

---

[3] The counties include Hood River, Multnomah, and Wasco Counties in Oregon and Clark, Klickitat, and Skamania Counties in Washington.

Forest Plan.  The Scenic Area contains approximately 50,000 acres of federal land, and these governing statutes and management plans outline a cooperative management strategy and implementation procedure between federal and state actors in the Scenic Area.

In 2003 ODFW began developing a plan to introduce[4] Rocky Mountain goats into the Scenic Area.  After numerous public meetings and with the assistance of USFS, ODFW completed a draft proposal in June 2004.

On March 10, 2005, Daniel T. Harkenrider, USFS manager of the Scenic Area, wrote a letter advising ODFW that USFS is not required to perform a consistency review to ensure the proposed introduction of Rocky Mountain goats is consistent with the Scenic Area Act.  Harkenrider noted ODFW has the authority to use the Scenic Area for wildlife-management projects such as the proposed introduction of Rocky Mountain goats and concluded the proposal is exempt from review under the savings-clause exception of the Scenic Area Act because the proposed Reintroduction Plan is a rule or regulation "pertaining to hunting and fishing."  *See*

---

[4] The parties use both the terms "introduce" and "reintroduce" to describe the plan to release Rock Mountain goats in the Columbia River Gorge.  The Court notes the underlying dispute between the parties and in the scientific literature as to whether Rocky Mountain goats are native to the Columbia River Gorge, but the Court does not need to resolve that dispute to adjudicate the motions presented.  It follows that the Court's use of either term does not address this substantive question.

16 U.S.C. § 544o(a)(8).

On April 15, 2005, USFS finalized a Memorandum of Understanding with ODFW describing the cooperative efforts USFS and ODFW would take to establish a viable population of Rocky Mountain goats in the Scenic Area. The Memorandum committed the USFS to establishing a technical committee to monitor the location of the goats with GPS radio collars and to perform a biannual study of the impact of the goats on vegetation in the Scenic Area. That same day, OFWC approved the Reintroduction Plan to introduce the goats in 521 square miles along the Oregon side of the Columbia River Gorge, which includes the Scenic Area and parts of the Hatfield Wilderness, Mt. Hood Wilderness, and Bull Run Watershed. The vast majority of these areas is federal land.

The Reintroduction Plan calls for ODFW to trap an initial group of 15 to 20 Rocky Mountain goats from northeastern Oregon and to release them at Herman Creek near Cascade Locks, Oregon, which is within the Scenic Area. ODFW would later release another 15-20 goats at Dodson, Oregon, and potentially more goats at Tanner Butte with the goal of ultimately establishing a stable population of 300 Rocky Mountain goats.

The proposed introduction area includes habitat for several endemic and rare plant species, including two candidate species under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544,

9    -    OPINION AND ORDER

and at least five candidate species under the Oregon Endangered
Species Act (OESA), Oregon Revised Statutes § 496.171, *et seq*.
*See* Scenic Area Plan at I-3-47, I-3-48, I-3-49.  *See also*
Reintroduction Plan at 5.

On September 30, 2005, USFS withdrew as a party to the
Memorandum of Understanding with ODFW.  To date, USFS has not
reviewed the project for consistency with governing law or
management plans nor has ODFW introduced any Rocky Mountain goats
into the Scenic Area pursuant to the Reintroduction Plan.

**III. Procedural Background.**

On May 6, 2005, Plaintiffs filed their Complaint in this
Court in which they seek declaratory and injunctive relief
against the Director of ODFW, individual members of the OFWC in
their official capacities, and USFS.  Plaintiffs amended their
Complaint on August 17, 2006, to substitute the new Director of
ODFW, Virgil Moore,[5] in his official capacity.  On October 13,
2006, Plaintiffs filed their Second Amended Complaint to limit
their claims against OFWC members to its Chair, Marla Rae, in her
official capacity.

On January 29, 2007, Plaintiffs filed their Motion for
Summary Judgment as to all of their claims.  On April 12, 2007,
State Defendants filed their Motion for Summary Judgment as to

---

[5] As noted, the Court has now substituted Roy Elicker, who
is the current Director of ODFW.

Plaintiffs' Claims Two and Three.  On May 14, 2007, USFS filed its Cross-Motion for Summary Judgment as to Plaintiffs' Claims One, Three, Four, and Five.

On September 5, 2007, the Court heard oral argument on the parties' Motions.  At the request of the Court, Plaintiffs and State Defendants filed supplemental briefs on September 17, 2007, and USFS filed a supplemental brief on September 18, 2007.

On September 18, 2007, the Court took the parties' Motions under advisement.

## STANDARDS

### I.   Summary Judgment.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

11  -   OPINION AND ORDER

Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## II.  Declaratory Judgment.

The Declaratory Judgment Act provides:  "In a case of actual

controversy within its jurisdiction, . . . any court of the
United States . . . may declare the rights and other legal
relations of any interested party seeking such declaration."
28 U.S.C. § 2201(a).  The Court has jurisdiction to entertain
requests for declaratory relief if there is a "substantial
controversy, between parties having adverse legal interests, of
sufficient immediacy and reality to warrant the issuance of a
declaratory judgment."  *Biodiversity Legal Found. v. Badgley*, 309
F.3d 1166, 1173 (9th Cir. 2002).  The language of the Declaratory
Judgment Act parallels the language of Article III of the United
States Constitution "case or controversy" requirement for federal
court jurisdiction.  *Principal Life Ins. Co. v. Robinson*, 394
F.3d 665, 669 (9th Cir. 2004).


## **DISCUSSION**

## I.   **Plaintiffs' Claims Two and Three Against State Defendants.**

Plaintiffs bring Claims Two and Three against State
Defendants in their official capacities.  Plaintiffs allege,
among other things, that the Reintroduction Plan is inconsistent
with the goals of both the Scenic Area Act and the Scenic Area
Plan; *i.e.*, the goals of protecting and enhancing scenic and
natural resources in the Scenic Area.

In their Motion for Summary Judgment, Plaintiffs seek a
declaration from the Court that State Defendants violated federal

13   -   OPINION AND ORDER

law when they approved the Reintroduction Plan without ensuring

its consistency with the Scenic Area Act and Scenic Area Plan and

request the Court to enjoin State Defendants from proceeding with

the Reintroduction Plan.  Plaintiffs assert this Court has

subject-matter jurisdiction over Claims Two and Three against

State Defendants on the grounds that Plaintiffs have a federal

cause of action for violation of the Scenic Area Act and for

prospective equitable relief.

In their Motion for Summary Judgment, State Defendants

contend (1) the Court lacks subject-matter jurisdiction over

Plaintiffs' Claims Two and Three; (2) State Defendants are immune

under the Eleventh Amendment from any legal action by Plaintiffs;

(3) Plaintiffs have not stated a claim upon which relief may be

granted; (4) Plaintiffs lack standing to bring Claims Two and

Three against State Defendants; and (5) Plaintiffs have not

exhausted their administrative remedies.

Even though State Defendants move for summary judgment,

the Court notes they are, in effect, requesting this Court to

dismiss Plaintiffs' Claims Two and Three.  In particular, motions

based on an assertion of lack of jurisdiction or failure to state

a claim are governed by Federal Rule of Civil Procedure 12(b).

In fact, State Defendants cite to Rule 12(b) in their Motion.

Thus, the Court will review State Defendants' Motion under the

standards for motions to dismiss.

14    -    OPINION AND ORDER

The threshold question is whether this Court has subject-matter jurisdiction over Plaintiffs' claims against State Defendants.  As courts of limited jurisdiction, federal courts have jurisdiction over cases that arise under the Constitution, laws, or treaties of the United States or over cases between states or between citizens of different states when the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1331, 1332.  When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence that support or attack the plaintiff's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005).  The plaintiff has the burden to establish that the court has subject-matter jurisdiction.  *Ass'n of American Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**A.    Jurisdiction Pursuant to the Scenic Area Act.**

As noted, Plaintiffs allege this Court has subject-matter jurisdiction over Claims Two and Three against State Defendants for violations of the Scenic Area Act.

**1.    The Law.**

The Scenic Area Act provides for citizen suits as one of the judicial remedies available to enforce its provisions:

> Any person or entity adversely affected may commence a civil action to compel compliance with sections 544 to 544p of this title-

> (A) against the Secretary, the Commission or
> any county where there is alleged a violation
> of the provisions of sections 544 to 544p of
> this title, the management plan or any land
> use ordinance or interim guideline adopted or
> other action taken by the Secretary, the
> Commission, or any county pursuant to or
> Commission under sections 544 to 544p of this
> title;
> (B) against the Secretary, the Commission, or
> any county where there is alleged a failure
> of the Secretary, the Commission or and
> county to perform any act or duty under
> Sections 544 to 544p of this title which is
> not discretionary with the Secretary, the
> Commission or any county.

16 U.S.C. § 544m(b)(2).

The Scenic Area Act, however, divides jurisdiction over citizen suits authorized by § 544m(b)(2) between state and federal courts:  The statute grants federal courts jurisdiction over claims against the Secretary of Agriculture and grants state courts jurisdiction over claims involving the Commission or the counties.  16 U.S.C. §§ 544m(b)(5),(b)(6).  *See also Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 620-21 (9th Cir. 1992).

### 2.  **Analysis.**

Although the Scenic Area Act provides for a claim for relief against the Secretary of Agriculture, the Commission, and the counties in Oregon and Washington within the Scenic Area for actions taken by those entities in violation of the Act or for failures to perform a mandatory statutory duty, the Act gives

federal courts jurisdiction only over claims against the
Secretary of Agriculture. *Id*. at 620-21. Here Plaintiffs
brought their action against the Director of ODFW and the Chair
of OFWC rather than against the Secretary of Agriculture, the
Commission or its members, or one of the counties within the
Scenic Area. Because the Act does not provide for a claim
against these State Defendants in federal court, this Court does
not have jurisdiction over Plaintiffs' Claims Two and Three
pursuant to the Act against State Defendants in their official
capacities.

       **B.   Jurisdiction Pursuant to *Ex Parte Young*.**

       Plaintiffs also maintain they have a federal claim for
equitable relief against State Defendants. State Defendants, in
turn, contend they have immunity as state officials under the
Eleventh Amendment. Plaintiffs, however, argue the exception to
Eleventh Amendment immunity in *Ex parte Young* allows equitable
actions against State Defendants in their official capacities for
violations of federal law under these circumstances. *See* 209
U.S. 123, 161-68 (1908).

             **1.   The Law.**

       The Eleventh Amendment to the United States
Constitution provides:

             The Judicial power of the United States shall
             not be construed to extend to any suit in law
             or equity, commenced or prosecuted against

>            one of the United States by Citizens of
>            another State, or by Citizens or Subjects of
>            any Foreign State.

The Supreme Court has construed the Eleventh Amendment to bar actions in a federal court against a state by its own citizens or by citizens of other states. *Hans v. Louisiana*, 134 U.S. 1, 9-19 (1890). "[A] suit against a state official in his or her official capacity . . . is not different from a suit against the State itself." *Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, federal courts are prohibited from presiding over actions against unconsenting states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment bar, however, is not absolute. Congress may abrogate the states' immunity by a clear expression of its intent to allow the states to be sued in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242-43 (1985).

**2. Analysis.**

Although Congress expressly provided that all actions against the Commission and the relevant counties for violations of the Scenic Area Act can only be brought in state court, the Act is silent as to claims against individual state officials acting in their official capacities. In *Broughton Lumber*, the Ninth Circuit, therefore, held the Act did not abrogate state defendants' Eleventh Amendment sovereign immunity from actions in federal court because its language did not convey an unmistakably

18    -    OPINION AND ORDER

clear statement of Congress's intent to do so.  975 F.2d 619-20.

Nevertheless, Plaintiffs contend the exception in *Ex parte Young*

applies under these circumstances to their claims against State

Defendants for violations of federal law.  209 U.S. 123 (1908).

In *Seminole Tribe of Florida v. Florida*, the Supreme

Court limited the *Ex parte Young* exception, which allows actions

against individual state officials for injunctive relief to

remedy ongoing or prospective violations of the law.  517 U.S. 44

(1996).  The Court held when

> Congress has created a remedial scheme for
> the enforcement of a particular federal
> right, we have, in suits against federal
> officers, refused to supplement that scheme
> with one created by the judiciary. . . .
> Therefore, where Congress has prescribed a
> detailed remedial scheme for the enforcement
> against a State of a statutorily created
> right, a court should hesitate before casting
> aside those limitations and permitting an
> action against a state officer based upon *Ex
> parte Young*.

*Id*. at 74.

As noted, Congress created in the Scenic Area Act a

detailed remedial scheme to address violations of the statute and

provided administrative and judicial remedies, executive and

citizen-based enforcement provisions, and a division of

jurisdiction between state and federal courts.  16 U.S.C. § 544m.

Thus, the exception in *Ex parte Young* does not apply to this

case, and State Defendants in their official capacities have

19    -    OPINION AND ORDER

Eleventh Amendment immunity in this case.

**C.    Jurisdiction Pursuant to 28 U.S.C. § 1367.**

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs contend the Court may exercise supplemental jurisdiction even if the Court does not have subject-matter jurisdiction over Claims Two and Three against State Defendants for violations of the Scenic Area Act or for prospective equitable relief.  If a federal court has federal-question jurisdiction over a plaintiff's claim, the court, at its discretion, may exercise supplemental jurisdiction as to closely-related claims over which it would not independently have jurisdiction.  28 U.S.C. § 1367.

To support their position that the Court may exercise supplemental jurisdiction over this matter, Plaintiffs asserted at oral argument that they have claims against State Defendants under Oregon law.  The Court noted at the hearing, however, that Plaintiffs have neither pled a state-law claim against State Defendants nor have they moved this Court for leave to amend their Complaint to add such a claim.  Thus, Plaintiffs have not brought a claim against State Defendants over which this Court could exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367.

In summary, the Court concludes it does not have jurisdiction over Plaintiffs' Claims Two and Three against State Defendants in their official capacities under the Scenic Area Act

nor under the *Ex parte Young* exception to Eleventh Amendment immunity.  The Court also concludes it does not have jurisdiction under § 1367 because Plaintiffs have not brought a claim against State Defendants over which this Court could exercise supplemental jurisdiction.

The Court, therefore, grants State Defendants' Motion to Dismiss Plaintiffs' Claims Two and Three against State Defendants for lack of jurisdiction and denies Plaintiffs' Motion for Summary Judgment as to their Claims Two and Three against State Defendants.  Accordingly, the Court need not address the parties' remaining arguments as to Plaintiffs' Claims Two and Three.

## II. Plaintiffs' Claims One, Three, Four and Five against USFS.

In Claim One, Plaintiffs contend USFS must perform a consistency review before USFS approves the Reintroduction Plan to ensure it is consistent with the Scenic Area Act.  In Claim Three, Plaintiffs contend USFS violated the Scenic Area Act by approving the Reintroduction Plan because reintroducing goats threatens the scenic and natural resources protected by the Scenic Area Act.  In Claim Four, Plaintiffs contend USFS must determine under NEPA the environmental impacts of the Reintroduction Plan before the Reintroduction Plan is implemented.  Finally, in Claim Five, Plaintiffs contend USFS must prohibit the implementation of the Reintroduction Plan because it violates the NFMA and the Mt. Hood Forest Plan.

21   -   OPINION AND ORDER

Plaintiffs and USFS filed Motions for Summary Judgment as to each of Plaintiffs' claims against USFS.

### A.    Plaintiffs' Claim One Pursuant to the Scenic Area Act and the Scenic Area Plan.

Plaintiffs allege in Counts I and II of Claim One that USFS violated the Scenic Area Act and the Scenic Area Plan when it erroneously exempted the Reintroduction Plan from review for consistency with the Scenic Area Act even though, according to Plaintiffs, the Reintroduction Plan constitutes a use of the Scenic Area and does not satisfy any exception.

In its Response to Plaintiffs' Motion for Summary Judgment and in its Cross-Motion for Summary Judgment, USFS contends even if the Scenic Area Plan requires review of the Reintroduction Plan for consistency with the Scenic Area Act, no provision in the Scenic Area Act or the Scenic Area Plan designates USFS as having to perform that review.  Even if it were required to perform such a review, USFS contends it properly exempted the Reintroduction Plan from review by USFS on the basis that the Reintroduction Plan falls under the hunting and fishing savings-clause exception of the Scenic Area Act in light of the fact that it proposes the use of hunting as a means to manage the goat population.

### 1.    The Law.

As noted, the Scenic Area Act and the Scenic Area Plan

create a cooperative approach between USFS, the Commission, and
the affected counties for managing the Scenic Area.  The Scenic
Area Plan describes USFS's role as "an expanded focus beyond the
traditional Forest Service Roles.  In addition to administration
of the National Forest System . . . in the Scenic Area, the
Forest Service will be actively involved as a partner and
provider of technical support for state and local governments on
non-federal lands."  Scenic Area Plan at IV-2-1.  The Scenic Area
Plan further identifies USFS's responsibility to manage the
Scenic Area, to monitor actions within the Scenic Area, to make
resource inventories, and to provide technical assistance in
cooperation with other relevant actors.  Scenic Area Plan at IV-
2-1, IV-2-2.  The management responsibilities of the USFS include
retention of jurisdiction in some cases "to review uses or
development and certify consistency with the Management Plan.
Where this is the case, the Forest Service will monitor the
results of these actions to ensure that required mitigation
measures are implemented and the resources protected."  Scenic
Area Plan at IV-2-6, IV-2-7.

In its general policies for proposed uses that must be
reviewed for consistency in the GMAs and SMAs, the Scenic Area
Plan provides:  "The Forest Service shall review and issue a
determination of consistency with the Management Plan for
projects on federal lands.  The Forest Service shall review land

use and development actions of federal agencies for consistency
with the Management Plan." Scenic Area Plan at II-7-58. In its
specific policies for protection of plants and wildlife within
the SMAs, the Scenic Area Plan requires:

> The local government shall submit site plans
> (of uses that are proposed within 1,000 feet
> of a sensitive wildlife and/or plant area or
> site) for review to the Forest Service and
> the appropriate state agencies (Oregon
> Department of Fish and Wildlife or the
> Washington Department of Wildlife for
> wildlife issues and by the Oregon or
> Washington Natural Heritage Program for plant
> issues).
>
> The Forest Service wildlife biologists and/or
> botanists, in consultation with the
> appropriate state biologists, shall review
> the site plan and their field survey records.

Scenic Area Plan at I-3-37. It continues thereafter to outline
in great detail the site review that USFS must conduct to
determine whether the proposed use is consistent with the Scenic
Area Act's goal to protect sensitive plants and wildlife. Scenic
Area Plan at I-3-37, I-3-38, I-3-39, I-3-40. "Proposed uses that
would adversely affect sensitive wildlife or plant areas or sites
shall be prohibited." Scenic Area Plan at I-3-32.

### 2. Standard of Review.

Judicial review under the Scenic Area Act is provided
for in § 544m, which allows citizen suits to challenge actions
that violate the Scenic Area Act or the Scenic Area Plan and to
compel any nondiscretionary act required by the statute. 16

24   -   OPINION AND ORDER

U.S.C. §§ 544m(b)(2)(A),(B).

Provisions of the Scenic Area Act and the Scenic Area Plan have rarely been litigated, and Plaintiffs' Claim One appears to be the first challenge in the Ninth Circuit regarding USFS's responsibility to perform a consistency review of a proposed wildlife-management plan for the Scenic Area.

**3.    Analysis.**

16 U.S.C. §§ 544f(a)(1) and 544l(d) require USFS to administer federal lands within the Scenic Area consistent with the Scenic Area Act and to fulfill its responsibilities in the Scenic Area consistent with the Act.  Neither provision, however, requires a specific, procedural mechanism for determining whether a proposed action is consistent with the Act.  Plaintiffs, therefore, turn to the Scenic Area Plan to support their claim that USFS must perform a consistency review of the Reintroduction Plan before it can be implemented.

As noted, the Scenic Area Plan requires USFS generally to review projects on federal land and specifically to review projects that may affect areas of sensitive plant and wildlife habitat.  The Reintroduction Plan assumes the Rocky Mountain goats will inhabit a wide range of habitat in the Gorge that includes federal lands.  In addition, the Reintroduction Plan acknowledges the goats prefer steep, rugged terrain and will inhabit cliffs and talus within the Scenic Area.  The

25    -    OPINION AND ORDER

Reintroduction Plan, in fact, identifies eight vulnerable and
sensitive "[p]lant species adapted to talus, cliffs, or balds
[that] may be utilized or influenced by reintroduction goats."
The Scenic Area Plan also lists cliffs and talus as sensitive
areas that support unique and vulnerable dependent species.
Scenic Area Plan at I-3-39.  Because the goats will inhabit these
areas of sensitive plant and wildlife habitat within the Scenic
Area, the Scenic Area Plan requires USFS to perform a pre-
introduction consistency review of the impact of the
Reintroduction Plan.

        Although the Reintroduction Plan provides USFS will
monitor the goats after they settle into their home ranges, the
record does not reflect any federal or state agency has performed
a study as of this date regarding the impacts of the
reintroduction of goats in the Scenic Area or on adjacent federal
lands.

        USFS contends the savings-clause exception of the
Scenic Area Act exempts the Reintroduction Plan from review
because it proposes to use hunting as a means to manage the goat
population.  As noted, the savings clause provides:  "Nothing in
[the Scenic Area Act] shall – . . . affect the laws, rules and
regulations pertaining to hunting and fishing under existing
State and Federal laws and Indian treaties."  16 U.S.C. §
544o(a)(8).  USFS cites Oregon Revised Statute § 496.146 as the

26    –    OPINION AND ORDER

"applicable statute regulating hunting that is not to be affected
[by the statute] in this case."  Chapter 496, however, concerns
wildlife laws in general, and § 496.146 gives OFWC the authority
to "acquire, introduce, propagate and stock wildlife species in
such manner as the commission determines will carry out the state
wildlife policy and management programs."  Or. Rev. Stat.
§ 496.146(3).  In addition, Chapter 496 describes OFWC's
authority and does not appear to set out hunting or fishing
regulations.  In fact, Oregon's hunting and fishing regulations
appear in Chapter 497 titled "Licenses and Permits" and Chapter
498 titled "Hunting, Angling and Trapping Regulations."
Moreover, it is arguable whether the Reintroduction Plan even
pertains to hunting merely because one of the proposed management
techniques in the Reintroduction Plan's "Population Management
Alternatives" is by means of hunting goats.

    In any event, the Reintroduction Plan is more than a state
regulation.  It is a proposed action by the ODFW that must be
approved by the bi-state Commission for wildlife management on
federal land within a congressionally protected area and that
requires USFS involvement, approval, oversight, and review.
Moreover, the specific hunting regulations apparently have been
tabled until it is determined under the criteria of the
Reintroduction Plan "*if*, when and how much hunting opportunities
*will be offered*."  Emphasis added.  Thus, the Reintroduction Plan

27    -    OPINION AND ORDER

is not a state law, rule, or regulation[6] that designates, for
example, who is eligible for hunting goats, when or where hunting
can take place, how many goats can be taken, or by what means
they may be hunted.  The Court, therefore, concludes USFS's
reliance on § 544o(a)(8) to exempt the Reintroduction Plan from a
consistency review is misplaced.

In summary, the Court concludes the Scenic Area Act requires
USFS to perform a review to determine whether the Reintroduction
Plan is consistent with the Scenic Area Plan before the
Reintroduction Plan can be implemented.  It follows that USFS
violated the Act when it erroneously determined the
Reintroduction Plan was exempt from consistency review under the
Scenic Area Act and, as a result, failed to perform such a
review.  The Court, therefore, grants Plaintiffs' Motion for
Summary Judgment as to Claim One against USFS and denies USFS's
Cross-Motion for Summary Judgment as to Plaintiffs' Claim One.

### B.  Plaintiffs' Claim Three Pursuant to the Scenic Area Act and Scenic Area Plan.

In Claim Three, Plaintiffs allege the USFS violated the
Scenic Area Act and the Scenic Area Plan when it approved the
Reintroduction Plan even though, according to Plaintiffs, it does

---

[6] Both federal and Oregon Administrative Procedure Acts
require agencies to follow certain procedures for notice,
comment, and publication before an agency action becomes a rule
or regulation.  *See* 5 U.S.C. § 553; Or. Rev. Stat. §§ 183.325-
183.410.  Nothing in the record suggests these procedures were
followed when developing the Reintroduction Plan.

not satisfy the requirements of the Scenic Area Act and the
Scenic Area Plan to protect the natural and scenic resources of
the Scenic Area.  It is premature, however, for the Court to
attempt to address Plaintiffs' Claim Three against the USFS
because the Reintroduction Plan has not been implemented nor has
USFS conducted a consistency review to determine whether the
Reintroduction Plan satisfies the requirements of the Scenic Area
Act and the Scenic Area Plan.  The Court, therefore, does not
have a basis for determining the merits of Plaintiffs' Claim
Three against USFS and, accordingly, denies both Plaintiffs'
Motion for Summary Judgment and USFS's Motion for Summary
Judgment as to Claim Three as premature.

### C.    Plaintiffs' Claim Four Pursuant to NEPA.

In their Motion for Summary Judgment, Plaintiffs contend
USFS's involvement with the Reintroduction Plan constitutes a
major federal action that triggers NEPA, and, therefore, USFS
must comply with NEPA by analyzing the environmental impact of
the Reintroduction Plan.

In its Response to Plaintiffs' Motion for Summary Judgment
and in its Cross-Motion, USFS contends its involvement with the
Reintroduction Plan is not sufficient to constitute a major
federal action, and, therefore, NEPA does not apply.

### 1.    The Law.

NEPA is "our basic national charter for the protection

of the environment." 40 C.F.R. § 1500.1(a). It is a procedural statute that does not demand a particular outcome but is designed to ensure that agencies make informed and considered decisions regarding an action's potential effects on the environment before it is too late to address such concerns. *Klamath-Siskyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 993 (9th Cir. 2004). NEPA requires agencies considering "major federal action significantly affecting the quality of the human environment" to prepare an environmental impact statement (EIS). 42 U.S.C. § 4332(2)(c). When an agency is unsure whether a proposed action will significantly affect the environment, agencies generally prepare an environmental assessment (EA) before they prepare an EIS. *Klamath-Siskyou*, 387 F.3d at 993. If the agency determines in the EA that the proposed action will significantly affect the environment, the agency must prepare an EIS to explore its options. *Id.* If the agency determines the proposed action will not significantly affect the environment, it will issue a Finding of No Significant Impact (FONSI) and proceed with the action without an EIS. *Id.*

### 2. Standard of Review.

NEPA does not contain a judicial-review provision, and, therefore, the Court reviews an agency's compliance with NEPA under the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706. *See also Churchill County v. Norton*, 276 F.3d 1060, 1071

30   -   OPINION AND ORDER

(9th Cir. 2001).  The APA authorizes lawsuits by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute."  5 U.S.C. § 702.  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.

The APA only allows review of final agency actions. 5 U.S.C. § 704.  The Ninth Circuit has defined a final agency action as follows:

> The action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow.  The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)(internal quotation marks and citation omitted).

The definition of agency action includes an agency's failure to act.  5 U.S.C. § 551(12).  An agency's failure to act in accordance with its statutory duties has long been viewed by the Ninth Circuit as an exception to the final agency-action rule.  *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1137 (9th Cir. 1998).  This view permits a court to review agency inaction in addition to final agency actions for the purpose of

31   -   OPINION AND ORDER

compelling an agency to comply with the law.  The Ninth Circuit's approach is consistent with the APA, which requires courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

Generally an agency's decision not to perform an EIS under NEPA is reviewed under the APA's arbitrary and capricious standard.  *Ka Makani 'O Kohala Ohana Inc. v. Water Supply*, 295 F.3d 955, 959 (9th Cir. 2002).  Courts, however, employ that standard when the agency bases its decision not to perform an EIS on the results of an EA in which the agency did not find any significant impacts would result from the proposed action.  *Id.* When "an agency has decided that a particular project does not require the preparation of an EIS, without having conducted an [EA], and we are dealing with primarily legal issues that are based on undisputed historical facts, we review the decision under the less deferential standard of 'reasonableness'."  *Id.* (citing *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 667 (9th Cir. 1998)).

Here USFS did not prepare an EA or an EIS nor did USFS issue a categorical exclusion under NEPA to exclude the Reintroduction Plan from review.  An email from Chuti Fiedler, USFS biologist for the Scenic Area, to Plaintiffs' counsel confirmed USFS's position that a review pursuant to NEPA was unnecessary because the Reintroduction Plan does not constitute a

32  -  OPINION AND ORDER

major federal action.  Thus, as in *Ka Makani*, the questions
before the Court are legal ones based on historical fact:
whether USFS's involvement with the Reintroduction Plan
constitutes major federal action and whether USFS must,
therefore, comply with NEPA's procedural requirements.
Accordingly, the Court analyzes USFS's decision that NEPA is
inapplicable in these circumstances under the "reasonableness"
standard.

> **3.    Analysis.**

In their Motion, Plaintiffs rely on four factual bases
to support their contention that USFS's role related to the
Reintroduction Plan constitutes major federal action:  USFS's
involvement in developing the Reintroduction Plan; USFS's
assistance and cooperation in administering the Reintroduction
Plan; USFS's management authority over the federal land that
would be used as habitat for the goats under the Reintroduction
Plan; and USFS's authority to approve the Reintroduction Plan.

In its response to Plaintiffs' Motion and in its Cross-
Motion, USFS asserts its involvement in the Reintroduction Plan
is too minimal to constitute major federal action.  In addition,
USFS contends it is not required to approve the Reintroduction
Plan before it can be implemented.

"There are no clear standards for defining the point at
which federal participation transforms a state or local project

33    -    OPINION AND ORDER

into a major federal action.  The matter is simply one of
degree." *Ka Makani*, 295 F.3d at 960 (internal quotation and
citation omitted).  To determine whether a proposed action is a
major federal action, courts consider, *inter alia*, the amount of
federal funding and the nature and extent of federal involvement
in the project.  *Id*.  Federal decisionmaking authority over a
local, nonfederal project is sufficient to constitute major
federal action.  *Rattlesnake Coalition v. U.S. Envtl. Prot.
Agency*, No. 05-36097, 2007 WL 4276713, at *3-*4 (9th Cir. Dec. 7,
2007)(federal funding and approval of a plan for a local project
that does not involve federal agency cooperation or control does
not constitute major federal action).

NEPA established the Council for Environmental Quality
(CEQ) to develop NEPA's implementing regulations.  *See* 42 U.S.C.
§§ 4342-47.  The CEQ has developed a regulation that defines
major federal action as follows:

> "Major Federal action" includes actions with
> effects that may be major and which are
> potentially subject to Federal control and
> responsibility.  Major reinforces but does
> not have a meaning independent of signifi-
> cantly.
>
>                 * * *
>
> (a) Actions include new and continuing
> activities, including projects and programs
> entirely or partly financed, assisted,
> conducted, regulated, or approved by federal
> agencies; new or revised agency rules,
> regulations, plans, policies, or procedures;
> and legislative proposals . . . .

34   -   OPINION AND ORDER

(b) Federal actions tend to fall within one
of the following categories:

* * *

(4) Approval of specific projects, such as
construction or management activities located
in a defined geographic area.  Projects
include actions approved by permit or other
regulatory decision as well as federal and
federally assisted activities.

40 C.F.R. § 1508.18.  The Court must interpret CEQ regulations

consistent with the principles of NEPA "to the fullest extent

possible."  *Klamath-Siskyou*, 387 F.3d at 993 (citation omitted).

### a.    USFS's Involvement in the Development and Administration of the Reintroduction Plan.

Even though USFS ultimately withdrew as a party to

the Memorandum of Understanding between ODFW and USFS (signed by

Harkenrider, Manager of the Scenic Area, and Gary Larsen, Forest

Supervisor for the Mt. Hood National Forest), the Memorandum

reflects USFS assisted and cooperated in developing the

Reintroduction Plan.  In addition, the Reintroduction Plan itself

defines the project as a cooperative effort between ODFW and USFS

and indicates USFS will monitor vegetation and track the goats.

Because USFS did not sign the Reintroduction Plan, however, it is

unclear whether it will comply with it.  In any event, the Mt.

Hood Forest Plan provides for introduction of wildlife species

"in cooperation with Oregon Department of Fish and Wildlife."

Mt. Hood Forest Plan at IV-75.  Moreover, in Harkenrider's letter

from USFS to ODFW in which USFS indicates a consistency review is

35    -    OPINION AND ORDER

not required, Harkenrider concludes "[t]he State must coordinate with the U.S. Forest Service and other agencies to mitigate issues and concerns with effects to habitat or other federal interests."  The Scenic Area Plan echoes Harkenrider's conclusion and requires USFS to monitor the project and to mitigate its impacts on federal resources when it performs a consistency review.  Scenic Area Plan at IV-2-6, IV-2-7.  Thus, some federal cooperation clearly has already occurred during the development of the Reintroduction Plan and additional cooperation appears imminent if the plan is implemented.

Planning and advising on a project without more, however, is not sufficient to constitute a major federal action. *Ka Makani*, 295 F.3d at 961 ("Although [U.S. Geological Survey] played an advisory role in the planning of the Kohala Project because of the agency's expertise and participation in the preliminary research studies, the USGS was not in a decision-making role.").  Nevertheless, USFS's involvement and cooperation are factors to be considered when determining whether its conduct constitutes major federal action.  *See* 40 C.F.R. § 1508.18 ("Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies.").

36    -    OPINION AND ORDER

**b.    USFS's Management Authority over Federal Lands Used as Habitat for the Rocky Mountain Goats under the Reintroduction Plan.**

The regulatory definition for major federal action also includes those actions that are "potentially subject to Federal control and responsibility."  40 C.F.R. § 1508.18.  Here the Reintroduction Plan contemplates significant use of federal land under the management of USFS.  As noted, the Reintroduction Plan presumes the goats will inhabit federal lands in the Scenic Area, the Mt. Hood National Forest, the Hatfield Wilderness, and the Bull Run Watershed.  The Scenic Area Act charges the Secretary of Agriculture with the responsibility of ensuring that federal lands within the SMAs of the Scenic Area are administered in accordance with the Scenic Area Act and other laws and regulations applicable to the national forest system.  16 U.S.C. § 544f(a)(1).  The Scenic Area Plan indicates those laws and regulations that guide federal management include the Mt. Hood Forest Plan, the Land and Resource Management Plan for Gifford Pinchot National Forest, NFMA, and NEPA.  Scenic Area Plan at IV-2-11.  Part IV, Chapter 2, of the Scenic Area Plan also charges USFS with monitoring and enforcing the Scenic Area Act's provisions generally, including protection of scenic, cultural, and natural resources.

**c.    USFS Approval Authority over the Reintroduction Plan.**

Federal regulations also require USFS to issue a special-use permit for all uses of national forest system lands. 36 C.F.R. § 251.50. "Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization from the authorized officer [unless excepted]." 36 C.F.R. § 251.50(a) The permit is not required "if, based upon a review of a proposal, the authorized officer determines that the proposed use" meets a listed exception. 36 C.F.R. § 251.50(e).

The record does not reflect USFS has issued a special-use permit allowing implementation of the Reintroduction Plan or reviewed the Reintroduction Plan to determine whether it meets an exception listed in the regulation. In any event, USFS contends Plaintiffs have not established that the Reintroduction Plan constitutes a "use" under the regulation. The regulation, however, indicates "*[a]ll* uses of National Forest System lands . . . are designated 'special uses'" unless an exception for mining, grazing, or timber applies. 36 C.F.R. § 251.50 (emphasis added). In other words, all uses of national forest lands are special uses unless USFS determines an exception applies. In this case, however, none of the exceptions appear to be applicable, and USFS has failed to establish that the introduction of Rocky Mountain goats on federal lands in the national forest system is not a use as defined in the regulation.

38    -    OPINION AND ORDER

Thus, ODFW's Reintroduction Plan to use federal land to establish a population of Rocky Mountain goats constitutes a use of the national forest system lands and, therefore, is subject to federal approval.

36 C.F.R. § 241.2 also requires USFS, in conjunction with state fish and wildlife agencies, to determine the extent to which the national forests may be used for wildlife management.  The relevant section provides:

> The Chief of the Forest Service, through the Regional Foresters and Forest Supervisors, shall determine the extent to which national forests or portions thereof may be devoted to wildlife protection in combination with other uses and services of the national forests, and, in cooperation with the Fish and Game Department or other constituted authority of the State concerned, he will formulate plans for securing and maintaining desirable populations of wildlife species, and he may enter into such general or specific cooperative agreements with appropriate State officials as are necessary and desirable for such purposes.

Thus, USFS has approval authority over the Reintroduction Plan pursuant to 36 C.F.R. §§ 241.2 and 251.50.

The definition of major federal action also includes "[a]pproval of specific projects, such as . . . management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities." 40 C.F.R. § 1508.18.  In accordance with this regulatory

definition, the Ninth Circuit has held:

> [T]he mere fact of federal participation in a
> state-run project is not sufficient federal
> action to require an EIS. . . .  It is clear,
> however, both from our cases and from the
> federal regulations . . . that if a federal
> permit is a prerequisite for a project with
> adverse impact on the environment, issuance
> of that permit does constitute major federal
> action and the federal agency involved must
> conduct an EA and possibly an EIS before
> granting it.

*Ramsey v. Kantor*, 96 F.3d 434, 443-44 (9th Cir. 1996).

USFS relies on a regional memorandum issued by
Deputy Chief Gray Reynolds in 1996 to support its contention that
its role in the Reintroduction Plan does not constitute major
federal action.  Such memoranda, however, are not legally
binding.  *See United States v. Alameda Gateway Ltd.*, 213 F.3d
1161, 1168 (9th Cir. 2000).  Agency "interpretations contained in
policy statements, agency manuals, and enforcement guidelines,
all of which lack the force of law . . . are 'entitled to
respect' under our decision in *Skidmore*, but only to the extent
they have the 'power to persuade.'"  *Christensen v. Harris
County*, 529 U.S. 576, 587 (2000)(quoting *Skidmore v. Swift* & Co.,
323 U.S. 134, 140 (1944)).

Reynolds's memorandum contains a set of
hypotheticals to assist agency decisionmaking.  The particular
hypothetical quoted by USFS is based on circumstances where a
state alone proposed introduction of a species and the proposed

40    -    OPINION AND ORDER

introduction was consistent with the governing forest plan.  In
such a situation, the memorandum reflects NEPA documentation is
unnecessary.  Without deciding the hypothetical question, the
Court concludes the present matter is distinguishable from
Reynolds's hypothetical.  Here, as noted, a great deal of
federal-state cooperation is mandated by the Scenic Area Act, and
regulations require federal approval of this project.  In fact,
the Reintroduction Plan itself calls for federal cooperation.
Moreover, the parties dispute whether the Reintroduction Plan as
proposed is consistent with the Scenic Area Plan.  Thus, the
Reynolds memorandum is not persuasive support for USFS's
assertion that its actions relative to the Reintroduction Plan do
not constitute major federal action.

        In summary, there is little doubt that USFS had a
significant role in developing the Reintroduction Plan and
maintains a significant role in ensuring that the Reintroduction
Plan does not violate the Scenic Area Act, the Scenic Management
Plan, or any other governing laws, regulations, or forest plans.
Moreover, in accordance with 36 C.F.R. §§ 241.2 and 251.50, USFS
must approve of the Reintroduction Plan and issue a special-use
permit before the Reintroduction Plan can be implemented.  Thus,
USFS is "partly" assisting, conducting, and regulating the
Reintroduction Plan, which requires federal approval and is
"potentially subject to Federal control and responsibility."  *See*

41    -    OPINION AND ORDER

40 C.F.R. § 1508.18.  The Court, therefore, concludes USFS's role in the Reintroduction Plan constitutes major federal action as defined in 40 C.F.R. § 1508.18, and, as a result, USFS is required to comply with NEPA.  Thus, USFS's decision not to review the Reintroduction Plan in compliance with NEPA was unreasonable.

The Court's conclusion is consistent with the other laws that govern implementation of the Reintroduction Plan and that require NEPA compliance.  For example, NFMA requires compliance with NEPA procedures by mandating the development of LRMPs in accordance with NEPA procedures.  16 U.S.C. § 1604(g)(1).  The Mt. Hood Forest Plan, which, as noted, governs part of the federal land to be used for Rocky Mountain goat habitat, mandates "[a]ll projects will comply with National Environmental Policy Act requirements."  Mt. Hood Forest Plan at V-3.  The Mt. Hood Forest Plan's implementation guidelines also demand environmental analysis of projects on national forest lands and provide "[p]rojects and activities permitted through this Plan are subject to analysis under the NEPA process as they are planned for implementation."  Mt. Hood Forest Plan at V-5.  The Scenic Area Act and the Scenic Area Plan also require USFS actions in the Scenic Area to comply with all applicable laws and regulations, including NEPA.  16 U.S.C. § 544o(f)(1); Scenic Area Plan at IV-2-12.

42   -   OPINION AND ORDER

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment on Claim Four and denies USFS's Motion for Summary Judgment as to Plaintiffs' Claim Four.  Because the Reintroduction Plan requires USFS approval prior to implementation, USFS must comply with NEPA before ODFW or the Commission can implement the Reintroduction Plan.  *See Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397-98 (9th Cir. 1992)(although state actors may not be enjoined under NEPA merely because the state project involves major federal action, state actors may be enjoined pursuant to NEPA to allow for the federal agency to comply with NEPA if the state project requires federal approval to proceed).

**D.  Plaintiffs' Claim Five Pursuant to NFMA.**

Plaintiffs move for summary judgment as to their Claim Five in which they allege USFS violated NFMA because it failed to prohibit the Reintroduction Plan even though, according to Plaintiffs, it is inconsistent with the Mt. Hood Forest Plan.

In their Response to Plaintiffs' Motion and in their Cross-Motion, USFS asserts it has not violated NFMA nor is the Reintroduction Plan inconsistent with the Mt. Hood Forest Plan. USFS also contends its conduct is not reviewable under the APA as a failure to perform a discrete, legally required act because NFMA does not require USFS to take action to prevent the Reintroduction Plan from proceeding.

43    -    OPINION AND ORDER

### 1.   The Law.

NFMA, 16 U.S.C. §§ 1600-87, requires USFS to develop an LRMP to guide the management of each of the national forests.  16 U.S.C. § 1604.  NFMA also requires USFS to ensure the continued diversity and viability of plant and animal communities and the productivity of the soil.  16 U.S.C. § 1604(g)(3).  Resource plans, permits, contracts, and other instruments that provide for the use of national forests must be consistent with the LRMP.  16 U.S.C. § 1604(I).  *See also Ecology Ctr., Inc. v. Austin*, 430 F.3d 1057, 1062 (9th Cir. 2005).  NFMA, however, does not create any procedural mechanism for agencies to determine whether an action is consistent with the LRMP.

### a.   Mt. Hood Forest Plan.

The Mt. Hood Forest Plan is a 600-page guide adopted in 1990 that outlines the strategy for managing the forest to achieve desired future conditions and for implementing and monitoring forest management.  Among the many requirements set out in the Mt. Hood Forest Plan, USFS must protect habitat for sensitive, threatened, and endangered plants and animals. Mt. Hood Forest Plan at IV-69.  Moreover, "[i]ntroductions of native or nonnative wildlife species may occur outside of A2 Wilderness,[7] in cooperation with Oregon Department of Fish and

---

[7] "A2" is the designation in the Mt. Hood Forest Plan for wilderness areas.

Wildlife."  Mt. Hood Forest Plan at IV-75.

    **2.  Standard of Review**.

    NFMA does not contain a judicial-review provision.  The APA, therefore, governs this Court's review of USFS's failure to prohibit implementation of the Reintroduction Plan.  *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1008-09 (9th Cir. 2006).  As noted, the Reintroduction Plan has not yet been implemented and USFS has not issued any permit to allow it to proceed.  Even though USFS initially approved the Reintroduction Plan when it entered into the Memorandum of Understanding with ODFW on April 15, 2005, USFS terminated its involvement in the Memorandum by unilaterally withdrawing from it on September 30, 2005, pursuant to the Memorandum's termination provision.  The Court is not aware of any official USFS approval or disapproval of the Reintroduction Plan after USFS's withdrawal from the Memorandum, and USFS confirmed at oral argument that it had not taken any subsequent position as to the Reintroduction Plan.  Accordingly, USFS's inaction is properly reviewed by the Court as a failure to act under the APA rather than as a final agency action "not in accordance with law."  *See* 5 U.S.C. §§ 706(1),(2)(A).

    As noted, the APA permits review of final agency action, which is defined in the statute to include an agency's failure to act.  5 U.S.C. § 551(13).  The Supreme Court has

45    -    OPINION AND ORDER

further defined failure to act as an agency's failure to do some discrete, legally required act. *Norton v. S. Utah Wilderness Alliance* (SUWA), 542 U.S. 55, 62-63 (2004).

> **3.    Analysis**.

Plaintiffs contend USFS violated NFMA and the Mt. Hood Forest Plan by failing to prohibit the Reintroduction Plan as follows: (1) the introduced goats will threaten sensitive plants in the Scenic Area by either eating or trampling them and (2) the reintroduction of goats will effectively occur in a designated A2 wilderness.

> **a.    Protection of Sensitive Plants**.

USFS contends the "protection of sensitive plants" is not the kind of discrete, legally required act that the Court can compel when Plaintiffs merely contend the agency failed to act. In *SUWA*, the plaintiff alleged the Bureau of Land Management (BLM) failed to prevent off-road vehicle use in Wilderness Study Areas (WSAs), and, as a result, the BLM violated the provision of the governing land-management plan that required it to manage WSAs to prohibit impairment of the WSAs' suitability as wilderness. 542 U.S. at 65-66. The Court noted even though the governing land-use plan required BLM to manage WSAs without impairing their wilderness qualities, BLM had discretion to decide how to meet that requirement because the forest plan did not specifically describe how the agency was to preserve the

46    -    OPINION AND ORDER

WSAs' wilderness qualities. *Id*. at 66. Thus, under the APA, the Court held it could not enforce the terms in the plan generally because it could only compel the agency to perform a specific, legally required act. *Id.* As examples of discrete, legally required acts, the Court listed the failure to promulgate a required rule or the failure to meet a statutory deadline. 542 U.S. at 63. The Court held the failure to act means the failure to do something defined in § 551 of the APA such as failure to issue a permit, license, rule, etc. *Id*. The Court also expressed its concern that defining the failure to act any other way would entangle the judiciary in a supervisory role presiding over "abstract policy disagreements which courts lack both the expertise and information to resolve." *Id*. at 67.

As in *SUWA*, Plaintiffs here assert USFS failed to prohibit the Reintroduction Plan in the Mt. Hood National Forest even though, according to Plaintiffs, it is inconsistent with a general provision of the Mt. Hood Forest Plan that requires USFS to protect sensitive plants. Here, as in *SUWA*, USFS also is required by the Mt. Hood Forest Plan to protect sensitive plants generally, but the Mt. Hood Forest Plan does not require specific action by USFS to ensure that sensitive plants are protected. USFS, therefore, has discretion to determine how to meet the Mt. Hood Forest Plan requirement.

Accordingly, this Court cannot compel the agency

47    -    OPINION AND ORDER

to act to "protect sensitive plants" because, to that end, the statute does not require any specific, discrete act by USFS.  If the Reintroduction Plan were implemented and Plaintiffs had evidence that the goats were eating or trampling protected plants in violation of the Mt. Hood Forest Plan, a claim might lie under § 706(2)(A) of the APA as an agency action "not in accordance with law."  *See* 5 U.S.C. § 706(2)(A).  That, however, is not the case here.

> **b.    Wildlife Introduction in Wilderness Areas.**

The Mt. Hood Forest Plan requires wildlife species introductions to "occur outside A2 Wilderness."  Mt. Hood Forest Plan at IV-75.  Plaintiffs contend the Reintroduction Plan violates this provision of the Mt. Hood Forest Plan because the goats, although "introduced" outside of the wilderness areas, will inhabit those areas upon release.  USFS contend they have satisfied the plain language of the Mt. Hood Forest Plan, which allows USFS to introduce wildlife species outside of wilderness areas in cooperation with ODFW.

The Court could not find a specific definition of "introduction" as it occurs in the context of this case nor any authority in the Ninth Circuit that suggests "introduction" means anything but the geographical point at which the trapped goats are released.  As noted, the Reintroduction Plan calls for three introduction sites, and each is outside of federal wilderness

areas.   Nowhere in the Mt. Hood Forest Plan does it indicate that an agency must keep such species out of wilderness areas after they have been introduced.

Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment as to Claim Five because Plaintiff has not established the Reintroduction Plan is inconsistent with the Mt. Hood Forest Plan nor that USFS has failed to take a discrete, legally required act to protect sensitive plants.  In turn, the Court grants Defendant USFS's Cross-Motion for Summary Judgment as to Plaintiffs' Claim Five.

<u>**CONCLUSION**</u>

For these reasons, the Court

1.   **DENIES** Plaintiffs' Motion as to Claims Two and Three against State Defendants;

2.   **GRANTS** State Defendants' Motion as to Plaintiffs' Claims Two and Three;

3.   **GRANTS** Plaintiffs' Motion as to Claims One and Four against USFS, **DENIES as premature** Plaintiffs' Motion as to Claim Three against USFS, and **DENIES** Plaintiffs' Motion as to Claim Five against USFS; and

4.   **DENIES** USFS's Cross-Motion as to Plaintiffs' Claims One and Four, **DENIES as premature** USFS's Cross-Motion as

to Plaintiffs' Claim Three, and **GRANTS** USFS's Cross-Motion as to

Plaintiffs' Claim Five.

IT IS SO ORDERED.

DATED this 27th day of December, 2007.


                              __/s/ Anna J. Brown_____
                              ANNA J. BROWN
                              United States District Judge